**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

IN RE:

EVERGREEN MORTGAGE
NOTES, LLC

Debtor.

_____/

Case No. 6:20-bk-07071-LVV
Chapter 11

**DEBTOR'S PLAN OF REORGANIZATION
<u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

  _/s/ Andrew S. Ballentine_____
**ANDREW S. BALLENTINE**
Florida Bar Number: 118075
aballentine@dsklawgroup.com
ebarker@dsklawgroup.com
**de Beaubien, Simmons, Knight,
   Mantzaris & Neal, LLP**
332 N. Magnolia Avenue
Orlando, FL 32801
Telephone: (407) 422-2454
Fax Number: (407) 849-1845

Counsel for Evergreen Mortgage Notes, LLC and
Debtor-in-Possession

March 31, 2021

# INTRODUCTION

Evergreen Mortgage Notes, LLC, the above-captioned Debtor-in-Possession, proposes the following plan of reorganization under section 1121(a) of the Bankruptcy Code.[1]  Claims against Debtor (other than Administrative Claims and Fee Claims) are classified in Article III hereof and treated in Article V hereof.

## I.    DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Definitions

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

***Administrative Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving Debtor's Estate, any actual and necessary costs and expenses of operating Debtor's business, any indebtedness or obligations incurred or assumed by Debtor-in-Possession in connection with the conduct of its business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under sections 330, 331, or 503 of the Bankruptcy Code, any fees or charges assessed against Debtor's Estate under section 1930 of Chapter 123 of Title 28 of the United States Code, and any Claim for goods delivered to Debtor within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code.

***Administrative Claims Bar Date*** means the date by which all Administrative Claims must be filed with the Court to be allowed. The Administrative Claims Bar Date will be established by the Court as a specific date prior to the Confirmation Date.

***Allowed*** means, with reference to any Claim, (a) any Claim against Debtor that has been listed by Debtor in the Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not Disputed by the Claims

---

[1] Capitalized terms used in this Introduction shall have the meanings ascribed to them herein below.

Objection Deadline, (d) any Claim the amount or existence of which, if Disputed, (i) has been determined by a Final Order of a court of competent jurisdiction, or (ii) has been allowed by Final Order of the Court, or (e) any Claim which the Reorganized Debtor deem allowed, depending upon the party responsible for distribution under the Plan; provided, however, if the time to object to Claims has not expired, a Claim shall not be deemed allowed unless designated as such by the Reorganized Debtor; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder.

*Allowed Claim*    means a Claim (a) with respect to which a Proof of Claim has been filed with the Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Bankruptcy Rule 3003 or any notice or Final Order of the Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by Debtor with the Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Bankruptcy Rule 3018(a). Unless otherwise specified in the Plan or any Final Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

*Avoidance Actions*    means those certain claims or Causes of Action of the Estate arising out of or maintainable pursuant to sections 510, 542, 543, 544, 545, 547, 548, 550, or 551 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

*Ballot*    means each of the ballot forms distributed with the Plan to each Holder of an Impaired Claim (other than to Holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan.

| | |
|---|---|
| ***Bankruptcy Code*** | means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as in effect on the date hereof. |
| ***Bankruptcy Rules*** | means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, and local rules of the Court, as the context may require. |
| ***Business Day*** | means any day on which commercial banks are open for business, and not authorized to close, in the City of New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a). |
| ***Cash*** | means legal tender of the United States of America. |
| ***Causes of Action*** | means all claims (including those assertable derivatively), liabilities, obligations, suits, debts, sums of money, damages, demands, judgments, whether known or unknown, now owned or hereafter acquired by Debtor, and the Cash and non-Cash proceeds thereof, whether arising under the Bankruptcy Code or other federal, state or foreign law, equity or otherwise, other than Avoidance Actions or any claims or causes of action released pursuant to the terms of this Plan. |
| ***Chapter 11 Case*** | means the Chapter 11 Case commenced by Debtor in the Middle District of Florida, Orlando Division—Case No. 6:20-bk-07071. |
| ***Claim*** | means any claim, as such term is defined in section 101(5) of the Bankruptcy Code. |
| ***Claims Objection Deadline*** | means the first Business Day that is ninety (90) days after the Effective Date, or such other later date the Court may establish or pursuant to an order on a motion by the Reorganized Debtor which motion may be filed before or after such deadline and may be approved upon notice and a hearing. |
| ***Class*** | means a group of Claims or Equity Interests as classified under the Plan. |
| ***Collateral*** | means any property or interest in property of Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law. |
| ***Confirmation Date*** | means the date on which the Confirmation Order is entered by the Court. |
| ***Confirmation Hearing*** | means the hearing to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time. |

| | |
|---|---|
| ***Confirmation Order*** | means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code. |
| ***Court*** | means, (a) the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, having jurisdiction over the Chapter 11 Case; (b) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States Bankruptcy Court for the Middle District of Florida, Orlando Division; and (c) any other court having jurisdiction over the Chapter 11 Case or proceedings arising therein. |
| ***Debtor*** | means Evergreen Mortgage Notes, LLC. |
| ***Debtor-in-Possession*** | means Debtor in its capacity as Debtor-in-Possession in the Chapter 11 Case pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. |
| ***Disposable Income*** | shall have the same definition and meaning as the same term is defined under 11 U.S.C. § 1191(d). For purposes of determining disposable income, all payments provided for under this Plan are expenses reasonably necessary to be expended for the maintenance, support, continuation, preservation and operation of Debtor's business, as well as payments and reserves by Debtor for capital expenditures, expenses to grow the business, and other expenses reasonably anticipated to improve Debtor's profitability and efficiency. |
| ***Disputed*** | means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed and that has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent, or (ii) for which a proof of claim was required, but as to which a proof of claim was not timely or properly filed; or (b) any Claim as to which Debtor or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the Holder of such Claim. |
| ***Distributions*** | means the distribution in accordance with this Plan to Holders of Allowed Claims. |
| ***District Court*** | means the United States District Court, Middle District of Florida, Orlando Division. |
| ***Effective Date*** | means the first Business Day thirty (30) days after entry of a Confirmation Order; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first Business Day after such stay is no longer in effect. |

| | |
|---|---|
| ***Equity Interest or Interest*** | means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest. |
| ***Estate*** | means the Estate of Debtor as is appropriate in the context created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code. |
| ***Fee Claims*** | means an Administrative Claim under section 330(a), 331, or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Effective Date (including reasonable expenses of the members of the Creditors Committee incurred as members of the Creditors Committee in discharge of their duties as such). |
| ***Final Order*** | means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such Court, the operation or effect of which has not been stayed, reversed, vacated, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending. |
| ***General Unsecured Claim*** | means a Claim against Debtor that is not otherwise classified. |
| ***Governmental Unit*** | has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code. |
| ***Holder*** | means the holder of a Claim or Interest, as applicable. |
| ***Impaired*** | means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code. |
| ***Indemnification Obligation*** | means any obligation of any of Debtor to indemnify, reimburse, or provide contribution pursuant to charter, by-laws, contract, or otherwise; provided, however, that such term shall not include any obligation that constitutes a subordinated Claim. |
| ***Initial Distribution Date*** | means the date of the first distribution by Debtor or the Reorganized Debtor as applicable, to a particular class of creditors. |
| ***Insider*** | has the meaning set forth in section 101(31) of the Bankruptcy Code. |

| | |
|---|---|
| ***Lien*** | has the meaning set forth in section 101(37) of the Bankruptcy Code. |
| ***Ongoing Trade Claim*** | means any General Unsecured Claim that is an obligation of Debtor to third-party providers of goods and services to Debtor that facilitate Debtor's operations in the ordinary course of business and will continue to do so after emergence from the Chapter 11 Case. |
| ***Ongoing Trade Vendors*** | means any third-party providers of goods and services to Debtor. |
| ***Person*** | means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other entity. |
| ***Petition Date*** | means December 31, 2020. |
| ***Plan*** | means this Plan, as it may be amended or modified from time to time, together with all addenda, exhibits, schedules or other attachments, if any. |
| ***Plan Interest Rate*** | means simple interest at the rate of three percent (3%) per annum. |
| ***Plan Payments*** | means payments made by Debtor pursuant to the terms of the Plan. |
| ***Priority Claim*** | means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code including, without limitation, certain allowed employee compensation and benefit claims of Debtor's employees incurred within one hundred eighty (180) days prior to the Petition Date and all claims for taxes. |
| ***Professional*** | means (i) any professional employed in the Chapter 11 Case pursuant to section 327, 328, or 1103 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b) of the Bankruptcy Code. |
| ***Pro Rata*** | means, with respect to any Claim, at any time, the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims (including Disputed Claims) in such Class, unless, in each case, the Plan provides otherwise. |
| ***Released Parties*** | has the meaning assigned to such term in Article X of the Plan. |
| ***Reorganized Debtor*** | means Debtor, or any successors thereto by merger, consolidation, or otherwise, on and after the Effective Date. |

| | |
|---|---|
| ***Scheduled*** | means, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Schedules. |
| ***Schedules*** | means the schedules of assets and liabilities, statements of financial affairs, and lists of Holders of Claims and Equity Interests filed with the Court by Debtor, including any amendments or supplements thereto. |
| ***Secured Claims*** | means any Claim (other than claims held by taxing authorities) to the extent reflected in the Schedules or a proof of claim filed as a Secured Claim, which is secured by a Lien on Collateral, to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff. |
| ***Subchapter V Trustee*** | means Richard Blackstone Webber, II, who was appointed pursuant to 11 U.S.C. § 1183. |

## B.  <u>Interpretation, Application of Definitions and Rules of Construction</u>

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral, such meanings to be applicable to both the singular and plural forms of the terms defined. Capitalized terms in the Plan that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. Any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. The rules of construction set forth in section 102 of the Bankruptcy Code (except for section 102(5)) shall apply to this Plan. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II.      BRIEF HISTORY OF DEBTOR AND BRIEF SUMMARY OF DEBTOR'S ONGOING BUSINESS

### A.      Brief History of Debtor

#### 1.      Background of Chapter 11 Case

On the "Petition Date, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Debtor is continuing in possession of its property and management of its business as Debtor-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Richard Blackstone Webber, II, was appointed the Subchapter V trustee. [ECF No. 6].

#### 2.      Description of Debtor's Pre-Petition Business

Debtor operates a business investing in and sales of real property and related negotiable notes throughout the country.  These investments are done through joint venture agreements with individual or groups of investors depending on the amount of the investment and the cost to purchase the respective real property or negotiable note.

#### 3.      Post-Petition Events

Following the commencement of the case, on the Petition Date, Debtor's sale of real property located in Orangeburg, South Carolina was approved by the Court, [ECF No. 28], but it ultimately fell through due to the purchaser's difficulty securing financing.  Debtor has made repairs to the property and is attempting to find a new purchaser of the property.  Debtor has hired Real Estate Broker to market and sell Orangeburg, South Carolina real property.  *See* [ECF Nos. 18, 28, 37, 48].

Additionally, Debtor's property in Bloomington, Indiana was the subject of a tax sale and relatives of the former property owner are attempting to claim the excess proceeds, which are due to Debtor.  Debtor retained Special Counsel and is pursuing those proceeds for the benefit of its creditors. [ECF Nos. 45, 47].

### B.      Brief Summary of Debtor's Potential Ongoing Business

Since the Petition Date, Debtor has explored various options based on its existing assets and how best to maximize its use to derive a benefit for the creditors.

As discussed above, Debtor's real property located in Orangeburg, South Carolina is currently on the market after the pre-petition sale fell through.  Debtor has the option of selling this property, or alternatively, attempting to find a renter.  Debtor is exploring a rent-to-own option and is proceeding on that basis due to difficulties finding a buyer who is qualified.

Debtor has two properties located in Illinois—one in Moline and one in Peoria.  Debtor is currently evaluating the best options for these properties and believes that a sale of these properties may be their best use.  The Moline, Illinois property is vacant, in an inconvenient location, lacks a

driveway, and was damaged by the last tenant(s).  Debtor believes selling the property is its optimum use but is exploring renting until a sale can be done.  Similarly, the Peoria, Illinois property is vacant.  However, the Peoria, Illinois property had some tax issues and might have been lost pre-petition to a tax sale.

Debtor's note on the property located in Mount Olivet, Kentucky, is performing and the owner of the property continues to make her payments under the Note.  Due to the significant discount required to sell the Note, Debtor intends to continue receiving payments under the Note unless the owner of the property is able to get financing to pay it off in full.  The proceeds from the Note will be used to cover the costs of the service monitoring the property and to generate funds for payments to creditors.

## III.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### A.    <u>Introduction</u>

In pursuit of a successful exit from bankruptcy, Debtor submits this plan of reorganization to provide the framework for continuation of Debtor's business for the benefit of its creditors and Estate.  Debtor's Plan proposes distributions to creditors related to the Subchapter V mandate.  All Claims and Interests treated under Articles V of the Plan are divided into the following classes, which shall be mutually exclusive:

### B.    <u>Classes of Claims</u>

1.    <u>Unclassified Claims (not entitled to vote on the Plan)</u>

(a)    <u>Administrative Claims</u>.

(b)    <u>Fee Claims</u>.

2.    <u>Classes of Claims</u>

(a)    <u>Class 1</u>: Priority Claims.

(b)    <u>Class 2</u>: General Unsecured Claims.

(c)    <u>Class 3</u>: Ongoing Trade Claims.

(d)    <u>Class 4</u>: Equity Interests.

## IV.    TREATMENT OF UNCLASSIFIED CLAIMS

### A.    <u>Administrative Claims</u>

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Claim shall be paid in full over a

three-year period after the Effective Date, or upon such other terms as may be agreed upon by the Holder of the claim and the applicable Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Court. The Allowed Administrative Claims shall be paid from Cash on hand or through pre-petition retainers. Debtor estimates Administrative Claims (excluding Fee Claims) to be less than $10,000.00. It is anticipated that the Administrative Claims shall come from the Subchapter V Trustee only. The Court will establish an Administrative Claims Bar Date.

### B. Fee Claims

All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503, or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtor, counsel to the Reorganized Debtor, the United States Trustee, Subchapter V Trustee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against Debtor, Reorganized Debtor, or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtor, counsel for the Reorganized Debtor, and the requesting party no later than seventy-five (75) days after the Effective Date. The Allowed Fee Claims are to be paid in full in Cash within three (3) Business Days of the Final Order allowing such Claims.

## V. TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. Class 1 – Priority Claims

#### 1. Distributions

Except to the extent that a Holder of an Allowed Priority Claim shall have agreed in writing to a different treatment, the Holder of an Allowed Priority Claim will be paid in full on the first day of the first month following the Effective Date with interest at the Plan Interest Rate.

#### 2. Impairment and Voting

Class 1 is Impaired under the Plan. Holders of Allowed Priority Claims in Class 1 are entitled to vote to accept or reject the Plan.

### B. Class 2 – General Unsecured Claims

#### 1. Distributions

Except to the extent that a Holder of an Allowed General Unsecured Claim shall have agreed in writing to a different treatment, each Holder of an Allowed General Unsecured Claim

shall have their claim fully satisfied by virtue of Debtor devoting its Disposable Income over a three (3) year period commencing on the Effective Date to be paid on a semi-annual basis *pro rata* to Holders of Allowed General Unsecured Claims, provided that the minimum semi-annual payment of Disposable Income in each year after the Effective Date shall equate to $3,000.

So long as Debtor's Chapter 11 Case remain open, Debtor will, on a quarterly basis commencing on the Effective Date, file a quarterly report detailing its actual net profits for each calendar quarter (which profits will be calculated using an accrual basis method of accounting). The maximum Distribution to Class 2 Allowed Claims shall be equal to the total amount of Class 3 Allowed Claims, and no Holder of a Class 2 Allowed Claim shall receive an amount greater than the amount of its Allowed Claim.

In addition, the Holders of an Allowed General Unsecured Claim will receive *pro rata* quarterly Distributions from proceeds of Causes of Actions and from the Venture (as set forth in Section VII.C.).

### 2.  Impairment and Voting

Class 2 is Impaired under the Plan. Each Holder of an Allowed General Unsecured Claim in Class 2 is entitled to vote to accept or reject the Plan.

### C.  **Class 3 - Ongoing Trade Claims**

#### 1.  Distributions

Except to the extent that a Holder of an Allowed Ongoing Trade Claim shall, at the election of the Reorganized Debtor, and to the extent that such Allowed Ongoing Trade Claim was not previously paid pursuant to an order of the Court shall be paid, in full, in two equally installment payments. The first installment payment will occur within ninety (90) days after the Effective Date, and the second and final installment payment shall be made within on hundred-fifty (150) days after the Effective Date.

#### 2.  Impairment and Voting

Class 3 is Impaired under the Plan. Each Holder of an Allowed Ongoing Trade Claim in Class 4 is entitled to vote to accept or reject the Plan.

### D.  **Class 4 – Equity Interests**

#### 1.  Distributions

Existing equity interests in Debtor shall be retained in the same proportion existing as of the Petition Date.

2.      Impairment and Voting

Class 4 is unimpaired and deemed to accept the Plan.

## VI.    PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTOR

### A.    Management

1.      Appointment of Officers, Directors, and Managing Members

Debtor's current officer/managing member, Marc Younger ("Mr. Younger"), shall serve in the same capacity as officer/managing member of the Reorganized Debtor and shall serve in accordance with any applicable non-bankruptcy law.

2.      Powers of Officers

The officer/managing member of Debtor or the Reorganized Debtor, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

3.      Management of Reorganized Debtor

The Reorganized Debtor's officer/managing member shall serve in accordance with the Reorganized Debtor's operating agreement, as applicable, and applicable non-bankruptcy law.

4.      Indemnification of Directors, Officers, Managers, and Employees

Upon the Effective Date, the charters and by-laws of the Reorganized Debtor shall contain provisions which (i) eliminate the personal liability of Debtor and the Reorganized Debtor then present and future directors, officers, and managing member for post-Effective Date monetary damages resulting from breaches of their fiduciary duties to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized; and (ii) require such Reorganized Debtor, subject to appropriate procedures, to indemnify the Reorganized Debtor's directors, officers, managing member, and other employees (as such employees are identified) serving on or after the Effective Date for all post-Effective Date claims and actions to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized.

### B.    Corporate Action

Except as set forth in the Plan, any action under the Plan to be taken by or required of Debtor or the Reorganized Debtor, including, without limitation, the adoption or amendment of certificates of incorporation and by-laws, and instruments or the selection of officers or directors or managing member, shall be authorized and approved in all respects, without any requirement of further action by any of Debtor's or Reorganized Debtor's boards of directors or managers, as

applicable.

Debtor and the Reorganized Debtor, shall be authorized to execute, deliver, file, and record such documents, contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Court or corporate approval or action. In addition, the selection of the Persons who will serve as the initial directors, officers, and managing members of the Reorganized Debtor as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors or board of managers of the applicable Reorganized Debtor.

## VII.   PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING, DISTRIBUTIONS, AND TREATMENT OF DISPUTED CLAIMS

### A.    <u>Business Operations</u>

The Plan contemplates that Debtor will continue to manage and operate its businesses in the ordinary course, but with restructured debt obligations. It is anticipated that the revenue from Debtor's ongoing operations will be sufficient to make the Plan Payments.  Please refer to the spreadsheets attached hereto as **<u>Composite Exhibit "A"</u>** for a projection of Debtor's anticipated financial performance during the term of the Plan.  For a historical lookback at Debtor's finances, please refer to the profit and loss statements attached hereto as **<u>Composite Exhibit "B</u>**."

As it pertains to potential Causes of Action, Debtor will review its financial affairs and determine if there are any viable Causes of Action within ninety (90) days of the Effective Date. Any such identified Cause of Action or potential Cause of Action shall be disclosed to all Claimholders and the Subchapter V Trustee prior to such period of time. The proceeds from any Causes of Action will be used to make Distributions to Allowed General Unsecured Claims.

### B.    <u>Funds Generated During Chapter 11</u>

Funds generated from operations through the Effective Date will be used for Plan Payments; however, Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses and Fee Claims.  For a complete report detailing the funds generated from Debtor's operations through the Effective Date, please refer to the monthly operating and financial reports filed with the Bankruptcy Court in Debtor's Chapter 11 Case.

### C.    <u>Contributions from Marc Younger</u>

In addition to his role as Debtor's managing member, Mr. Younger is a licensed real estate agent in the State of Florida.  As part of his role as a real estate agent, and unrelated to Debtor's endeavors, Mr. Younger has identified a potential opportunity for individuals or families purchasing homes in the Central Florida area and desiring to have certain remodeling projects done to those homes that would increase their desirability as vacation homes near the Central Florida's attractions (the "Venture").  Mr. Younger is in the early stages of preparing a business plan and model for the Venture.  As a preliminary estimate, Mr. Younger estimates that net profits for each

remodel project will be $5,000 to $10,000, for which there are already clients interested in having such projects done.  As such, it is anticipated that Mr. Younger will be able to generate income through this Venture and will dedicate twenty-five percent (25%) of the net income to payment of Debtor's Class 2 General Unsecured Creditors.  The maximum amount contributed shall be as follows: $25,000.00 in year one (1), $30,000.00 in year two (2), and $35,000.00 in year three (3).

### D.    Payment of Claims

Debtor or Reorganized Debtor shall pay all Allowed Claims as provided for in the Plan.

### E.    Voting of Claims

Each Holder of an Allowed Claim in an Impaired Class of Claims entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.

### F.    Distributions

#### 1.    Manner of Payment to Allowed Claims

Any payment made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

In the event the Plan is confirmed pursuant to Bankruptcy Code § 1191(b) as described below in Article IX.D, the Subchapter V Trustee shall make all payments and Distributions required under the terms of the Plan to Class 2 Claimholders only.  Any fees and expenses incurred by the Subchapter V Trustee in connection with the distribution of Plan Payments shall be detailed in quarterly fee applications (the "Quarterly Fee Reports") filed with the Court on negative notice. Upon approval of the fees and costs detailed in the Subchapter V Trustee's Quarterly Fee Reports, the approved fee and expense awards shall be deducted from, and charged against, the Distributions made by the Subchapter V Trustee in accordance with the terms of the Plan.  Debtor shall make payments to on account of all Allowed Secured Claims (if any) and Allowed Priority Claims (if any).

Except as specifically provided for in the Plan, no Claims, Allowed or otherwise, shall be entitled, under any circumstances, to receive any interest on a Claim.

#### 2.    Objections To And Resolution Of Claims

The Reorganized Debtor shall have the exclusive right to make and to file objections to, or otherwise contest the allowance of all claims.  Unless otherwise ordered by the Court, objections to, or other proceedings concerning the allowance of, Administrative Claims and Claims shall be filed and served upon the Holders of the Administrative Claims or Claims as to which the objection is made, or otherwise commenced, as the case may be, as soon as practicable, but in no event later

than the Claims Objection Deadline.  Objections to Fee Claims shall be filed and served within seventy-five (75) days of the Effective Date (or such longer period as may be allowed by order of the Court).

Objections to, or other proceedings contesting the allowance of, Administrative Claims and Claims may be litigated to judgment, settled or withdrawn, in the sole discretion of the Reorganized Debtor.  Debtor may settle any such objections or proceedings without Court approval or may seek Court approval without notice to any Person.

Unless an order of the Court specifically provides for a later date, any party filing a proof of Claim after the bar date established by the Court for such Claim shall not be entitled to treatment as a creditor with respect to such Claim for the purposes of voting on and distribution under the Plan unless and until the party filing such Claim either obtains the written consent of the Reorganized Debtor to file such Claim late or obtains an order of the Court upon written motion, with notice to the Reorganized Debtor, that permits the filing of the Claim.  In the event any proof of Claim is permitted to be filed after the Claims Objection Deadline, the Reorganized Debtor shall have ninety (90) days from the date of such order or agreement to object to such Claim, which deadline may be extended by the Court on motion of the Reorganized Debtor without a hearing or notice to Creditors.

3.    Distributions Following Allowance

Notwithstanding anything to the contrary set forth herein, each Holder of a Disputed Priority Claim that becomes an Allowed Claim subsequent to the applicable Initial Distribution Date shall receive the Distribution to which such Holder of an Allowed Claim is entitled at such time that the Reorganized Debtor make the next subsequent Distributions to Holders of other Allowed/Priority Claims. Nothing set forth herein is intended to, nor shall it, prohibit Debtor in its discretion, from making a Distribution on account of any Claim at any time after such Claim becomes an Allowed Claim. Each Holder of a Disputed General Unsecured claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive its Distribution within ten (10) Business Days of the order allowing such claim becoming final or within such time as may be agreed to by the claimant and Reorganized Debtor to the same *pro rata* extent as the current Distributions to the balance of the General Unsecured Class.

G.    **Estimation**

Debtor or Reorganized Debtor may, at any time, request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether Debtor or the Reorganized Debtor, have previously objected to such Claim. The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim.  If the Court estimates any Disputed Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to the Plan, or (c) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, Debtor or the Reorganized Debtor may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are

cumulative and not necessarily exclusive of one another.

### H.   Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the applicable Debtor's interpretation of the Plan shall govern.

### I.   Confirmation Pursuant to Bankruptcy Code § 1191(b) – "Cramdown"

Debtor reserves its rights to confirm using cramdown procedures set forth under 11 U.S.C. § 1191(b) in the event one or more—or even all—classes have not accepted the Plan.  The procedures of § 1191(b) provide as follows:

(b)   Notwithstanding section 510(a) of the Bankruptcy Code, if all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than paragraphs (8), (10) and (15) of that section, are met with respect to a plan, the court, on request of Debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is Impaired under, and has not accepted, the plan.

(c)   Rule of Construction. For purposes of Bankruptcy Code § 1191(b), the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:

(1)   With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of the Bankruptcy Code;

(2)   As of the effective date of the plan—

(A)   the plan provides that all of the projected disposable income of Debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

(B)   the value of property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of Debtor.

**J.**     **Liens**

Upon the treatment or other satisfaction of any secured Claims in accordance with the Plan, the Liens securing such secured Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

**K.**     **Enforcement of Subordination**

The classification and manner of satisfying all Claims and the respective Distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan.  The Confirmation Order shall enjoin, effective as of the Effective Date, all persons and entities from enforcing or attempting to enforce any such contractual, legal, and/or equitable rights so satisfied, compromised, and settled.

## VIII.   PROCEEDS OF AVOIDANCE ACTIONS

The Reorganized Debtor is retaining all Avoidance Actions and shall be under no obligation to pursue any such action.  In the event the Reorganized Debtor in their sole discretion determine to pursue an Avoidance Action and in the event of an affirmative recovery on any Avoidance Action, the net proceeds above the cost (including professional fees and expert witness fees) recovered by the Reorganized Debtor shall be distributed *pro rata* to Allowed General Unsecured Creditors.

The following Avoidance Actions are presently pending:

- Evergreen Mortgages Notes, LLC, v. Joseph Grimaldi and Sundeep Grimaldi, Case No. 6:21-ap-00048-LVV
    o Amount sought: $30,000.00

- Evergreen Mortgage Notes, LLC, v. Sukhwinder Virk and Gurmit Virk, Case No. 6:21-ap-00047-LVV
    o Amount sought: $30,000.00

Debtor anticipates filing Avoidance Actions against the following parties:

- James Flint, Space Coast Assets, LLC, and Flint Investments, LLP
    o Amount sought: $90,000.00

- Sian Banchs
    o Amount sought: $100,000.00

- Max Thrush, 2d Chances, LLC, and Wildcat Lending Fund One, LP

- Amount sought: $400,000.00

## IX.    EFFECT OF CONFIRMATION OF THE PLAN

### A.    <u>Continued Corporate Existence</u>

Debtor, as Reorganized Debtor, shall continue to exist after the Effective Date with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective state(s) governing its formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith. The Reorganized Debtor shall be responsible for filing required post-confirmation reports and each Reorganized Debtor shall pay quarterly fees of such Debtor due to the Office of the United States Trustee, if any, until such time as a final decree is entered closing the applicable Chapter 11 Case or the Bankruptcy Court orders otherwise.

### B.    <u>Settlement of Treatment of General Unsecured Claims</u>

Pursuant to Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the Plan constitutes a good-faith compromise and settlement of the rights and claims, if any, that the Holders of Claims may have against the Released Parties. Any Distributions to be made pursuant to the Plan shall be made on account, and in consideration, of the compromise and settlement provided hereunder, which upon the Effective Date shall be binding on the Holders of Claims (whether or not Allowed). The entry of the Confirmation Order shall constitute the Court's approval, as of the Effective Date, of the settlement and the Court's finding that the settlement is in the best interests of Debtor, its Estate, and its creditors.

### C.    <u>Vesting of Property</u>

The property of Debtor's Estate shall be revested in the Reorganized Debtor on the Effective Date.

### D.    <u>Discharge of Debtor</u>

**The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against Debtor, Debtor-in-Possession, the Reorganized Debtor, or Mr. Younger, or any of their respective assets or properties, arising prior to the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that Debtor will not be discharged of any debt:**

(1)   imposed by this Plan; or

(2) to the extent provided in § 1141(d)(6).

If Debtor's Plan is confirmed under Bankruptcy Code § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code.

Except as otherwise expressly specified in the Plan, any Holder of such discharged Claim shall be precluded from asserting against Debtor, the Reorganized Debtor, Mr. Younger, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.

### E.   Injunction

Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against Debtor or its managing member, Mr. Younger, that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against Debtor, the Reorganized Debtor, or Mr. Younger with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against Debtor, the Reorganized Debtor, or Mr. Younger on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against Debtor, the Reorganized Debtor, or Mr. Younger or against the property or interests in property of Debtor on account of any such Claim, and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from Debtor, the Reorganized Debtor, or Mr. Younger or the or against the property or interests in property of Debtor on account of any such Claim. Such injunction shall extend to successors of Debtor (including, without limitation, the Reorganized Debtor) and its respective properties and interests in property.

**ANY PARTY WISHING TO PRESERVE ITS SETOFF RIGHT, MUST FILE, PRIOR TO THE CONFIRMATION DATE, A MOTION FOR RELIEF FROM THE AUTOMATIC STAY SEEKING THE AUTHORITY TO EFFECTUATE SUCH A SETOFF RIGHT OR HAVE TIMELY FILED A PROOF OF CLAIM WITH THE COURT PRESERVING SUCH SETOFF RIGHT IN SUCH PROOF OF CLAIM OR AMENDMENT THERETO.**

### F.   Preservation of Causes of Action

The Reorganized Debtor shall retain all Causes of Action and Avoidance Actions. Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such Causes of Action or Avoidance Actions. Nothing contained in the Plan or the Confirmation Order shall be deemed

a waiver or relinquishment of any Claim, Causes of Action, right of setoff, or other legal or equitable defense that Debtor had immediately prior to the Petition Date that is not specifically waived, released or relinquished by the Plan. The Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that Debtor had immediately prior to the Petition Date as fully as if the Chapter 11 Case had not been commenced, and all of Debtor's legal and equitable rights respecting any Claim that are not specifically waived or relinquished by the Plan may be asserted after the Effective Date by the Reorganized Debtor to the same extent as if the Chapter 11 Case had not been commenced.

### G. Votes Solicited in Good Faith

Debtor has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### H. Administrative Claims Incurred After the Effective Date

Obligations incurred by the Reorganized Debtor after the Effective Date including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtor in the ordinary course of business and without application for or Court approval, subject to any agreements with any claim Holders.

### I. Releases by Debtor

**On the Effective Date, Debtor and the Reorganized Debtor, on behalf of themselves and their Estate, shall be deemed to release unconditionally all of their respective *current* officers, *current* directors, *current* managing members, *current* employees, *current* partners, *current* advisors, *current* attorneys, *current* financial advisors, *current* accountants, and other *current* professionals, and as to each their respective officers, directors, principals, members employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals (collectively, the "Released Parties" and individually, a "Released Party") from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken solely in their respective capacities described above or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to Debtor, the Chapter 11 Case, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Reorganized Debtor and Debtor shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set off or recoupment against any Claims of any such persons asserted against Debtor, (iii) the foregoing release shall not apply to any obligations that remain outstanding in respect of loans or advances made to individuals by Debtor, and (iv) the foregoing release applies to the Released Parties solely in their respective capacities described above.**

**J.**   **Releases by non-Debtor**

On the Effective Date, all Persons who (a) directly or indirectly, have held, hold, or may hold Claims, or (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Reorganized Debtor and the Released Parties not to (1) sue or otherwise seek recovery from any of the Reorganized Debtor or any Released Party on account of any Claim in any way related to Debtor or its business and affairs, including but not limited to any Claim based upon tort, breach of contract, violations of federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (2) assert against any of the Reorganized Debtor or any Released Party any claim, obligation, right, cause of action or liability that any Holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to Debtor, the Chapter 11 Case, or the Plan, provided, however, (i) none of the Released Parties shall be released from any Claim primarily based on any act or omission that constitutes gross negligence or willful misconduct as determined by a court of competent jurisdiction, (ii) the foregoing release shall not apply to obligations arising under the Plan, and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan.

**K.**   **Exculpation and Injunction in Respect of Released Parties**

1.   **Exculpation**

Debtor, the Reorganized Debtor, and the other Related Parties, shall have no liability whatsoever to any Holder or purported Holder of an Administrative Claim, a Claim, or an Equity Interest for any act or omission in connection with, or arising out of, the Plan, the negotiation of the Plan, the solicitation of votes for confirmation of the Plan, the Chapter 11 Case, the consummation of the Plan, the administration and implementation of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability.

2.   **Injunction**

Pursuant to section 105 of the Bankruptcy Code, no Holder or purported Holder of an Administrative Claim, a Claim or an Equity Interest shall be permitted to commence or continue any action, employment of process, or any act to collect, offset, or recover any Claim against a Released Party that accrued on or prior to the Effective Date and that has been released or waived pursuant to this Plan.

### L.      Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### M.      Preservation of Insurance

Debtor's discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against Debtor, the Reorganized Debtor (including, without limitation, its officers, managers, and current and former directors) or any other person or entity.

### N.      Indemnification Obligations Owed by Debtor

Indemnification Obligations owed to directors, officers, managers, and employees of Debtor (or the Estate of any of the foregoing) who served or were employed by Debtor as of or after the Petition Date, excluding claims that have been determined by Final Order to have resulted from gross negligence, willful misconduct, breach of fiduciary duty, or intentional tort, shall be deemed to be assumed pursuant to Sections 365 of the Bankruptcy Code under the Plan; provided that the Reorganized Debtor's liabilities in respect of such obligations shall be limited to the extent of available insurance coverage.

All Indemnification Obligations owed to directors, officers, managers, and employees of Debtor who served or were employed by Debtor prior to, but not after, the Petition Date shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan.

Indemnification Obligations owed to any Professionals retained pursuant to sections 327 or 328 of the Bankruptcy Code and order of the Court, to the extent that such Indemnification Obligations relate to the period after the Petition Date, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code under the Plan.

### X.      RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes: (1) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (2) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date; (3) to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein; (4) to resolve disputes as to the ownership of any Claim or Equity Interest; (5) to hear and determine objections to Claims and to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense

Claim; (6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated; (7) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code; (8) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order; (9) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code; (10) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan; (11) to hear and determine any issue for which the Plan requires a Final Order of the Court; (12) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; (13) to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date; (14) to hear and determine any Causes of Action, including any Avoidance Action, preserved under the Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3); (15) to hear and determine any matter regarding the existence, nature and scope of Debtor's discharge; (16) to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article X of the Plan; and (17) to enter a final decree closing the Chapter 11 Case.

## XI. MISCELLANEOUS PROVISIONS

### A.   Modification of the Plan

Subject to the limitations contained in the Plan: (1) Debtor reserve the right in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, Debtor or the Reorganized Debtor, as the case may be, may upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code.

### B.   Post Confirmation Status Report

Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, Debtor will file a status report with the Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, the Subchapter V Trustee and those parties who have requested special notice post-confirmation. The Court may schedule subsequent status conferences in its discretion.

### C.   Retention of Professionals

The Reorganized Debtor may retain professionals on such terms as it deems reasonable without Court approval.

### D.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Florida (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

### E.     Filing or Execution of Additional Documents

On or before the Effective Date, Debtor or the Reorganized Debtor, shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### F.     Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Reorganized Debtor, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.

### G.     Exemption From Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### H.     Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making Distributions shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any

Governmental Unit within six (6) months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable (unclaimed) distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

## I.    <u>Transmittal of Distributions to Parties Entitled Thereto</u>

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. All distributions made by automated clearing house from a domestic bank shall be deemed to be made as of the date of the automated clearing is effective. Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive Distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in Debtor's books and records. If any Distribution is returned by mail or otherwise, the Reorganized Debtor may keep said returned Distribution money.

## J.    <u>Unclaimed Property</u>

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six (6) months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 3 Claims in accordance with the provisions of this Plan.  However, checks issued by the Reorganized Debtor with respect to Allowed Class 1 Claims will be null and void if not cashed within sixty days of the date of issuance and such unclaimed distribution shall vest with the Reorganized Debtor.  Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor by the Holder of the Claim with respect to the check originally issued.

## K.    <u>Waiver of Federal Rule of Civil Procedure 62(a)</u>

Debtor may request that the Confirmation Order include (a) a finding that Federal Rule of Civil Procedure 62(a) shall not apply to the Confirmation Order, and (b) authorization for Debtor to consummate the Plan immediately after entry of the Confirmation Order.

## L.    <u>Exhibits and Schedules</u>

All Exhibits and Schedules to the Plan are incorporated into and constitute a part of the Plan as if set forth herein.

**M.**     **Default and Remedies of Allowed Claimholders**

In the event any Allowed Claimholder is not timely paid in accordance with the Plan, such Allowed Claimholder shall provide Debtor, Counsel to Debtor and the Subchapter V Trustee with written notice of said payment default (the "Default"). Debtor shall have fourteen (14) days from receipt of the Default notice to cure the Default. If Debtor fail to timely cure the Default, the Allowed Claimholder may seek relief from the Court to enforce this Plan, file for such relief related to the Plan in any state court of competent jurisdiction or such further relief that may be available to such Allowed Claimholder under federal or applicable state law.

**N.**     **Notices**

All notices, requests, and demands hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Counsel to Debtor:

Andrew Ballentine, Esq.
DSK Law
332 N. Magnolia Avenue
Orlando, FL 32801

Debtor:

Evergreen Mortgage Notes, LLC
Attn: Marc Younger
1476 Olympic Club Blvd.
Champions Gate, FL 33896

United States Trustee:

George C. Young Federal Building
400 West Washington Street
Suite 1100
Orlando, Florida 32801

Subchapter V Trustee:

Richard Blackstone Webber, II, Esq.
Zimmerman, Kiser & Sutcliffe, PA
315 East Robinson Street
Suite 600
Orlando, FL 32801

# XII.    RESERVED

# XIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>

To the extent not (i) assumed in the Chapter 11 Case prior to the Confirmation Date, rejected in the Chapter 11 Case prior to the Confirmation Date, (ii) subject of a separate motion or subject to the expedited procedures approved by the Court to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date, or (iii) specifically assumed pursuant to this Plan, each executory contract and unexpired lease that exists between Debtor and any Person is specifically rejected by Debtor that is a party to such executory contract or unexpired lease as of and subject to the Effective Date pursuant to the Plan.

The following executory contracts and unexpired leases are rejected:

(i)    executory contacts or unexpired non-residential leases that were rejected before the Confirmation Date; and

(ii)    all real estate leases that have been rejected pursuant to a court order during these bankruptcy cases.

The following executory contracts and unexpired leases are assumed:

(i)    all existing insurance policies that have not expired, been rejected or are subject to a motion to reject as of the Confirmation Date;

(ii)    all real property leases with Debtor as of March 31, 2021; and

(iii)   all contracts with Ongoing Trade Vendors that were not rejected prior to Confirmation or were not the subject of a motion to reject as of the Confirmation Date; and

## B.    <u>Limited Extension of Time to Assume or Reject</u>

Debtor shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract.  In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date.  Debtor's position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Bankruptcy Rule 1007 are the only executory contracts to which Debtor were a party as of the Petition Date.

In the event of a dispute as to whether a contract or lease is executory or unexpired, the right of Debtor or Reorganized Debtor to move to assume or reject such contract or lease, either

by motion or pursuant to such expedited procedures as have been approved by the Court, shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Court determining that the contract or lease is executory or unexpired. The deemed assumptions and rejections provided for in this Article XIII of the Plan shall not apply to such contract or lease.

In the event Debtor or the Reorganized Debtor become aware after the Effective Date of the existence of an executory contract or unexpired lease that was not included in the Schedules or on the Schedule of Additional Assumed Leases, the right of the Reorganized Debtor to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which Debtor or the Reorganized Debtor become aware of the existence of such contract or lease. The deemed assumptions and rejections provided for in this Article XIII.A. of the Plan shall not apply to any such contract or lease.

    **C.**    **<u>Cure</u>**

The applicable Reorganized Debtor, except as otherwise agreed by the parties, will cure any and all undisputed defaults under any executory contract or unexpired lease that is assumed by such Reorganized Debtor pursuant to the Plan in accordance with section 365 of the Bankruptcy Code within five (5) Business Days after the Effective Date. Notwithstanding Article (XIII)(A) or XIII(B), in the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any executory contract or unexpired lease that the Reorganized Debtor propose to assume, the Reorganized Debtor shall have until thirty (30) days after entry of a Final Order determining the amount, if any, of the applicable Debtor or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume or reject the related executory contract or unexpired lease. In the event the applicable Reorganized Debtor determines to assume the applicable executory contract or unexpired lease related to the disputed cure, such disputes shall be cured within five (5) Business Days of the Order determining the amount, if any, of the applicable Debtor or the applicable Reorganized Debtor's liability with respect thereto, becoming a Final Order or as may otherwise be agreed to by the parties.

    **D.**    **<u>Rejection Damage Claims</u>**

All Claims for damages arising from the rejection of executory contracts or unexpired leases must be filed with the Court in accordance with the terms of the order authorizing such rejection and any applicable bar dates established during the case, but in no event later than thirty (30) days after the Effective Date (unless rejected at a later date as a result of a disputed cure amount as set forth in Article XIII.C. herein). Any Claims not filed within such time will be forever barred from assertion against Debtor, its respective Estate and the Reorganized Debtor. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as General Unsecured Claims.

    **E.**    **<u>Guaranties</u>**

All guarantees of assumed leases and contracts shall remain in full force and effect after the Effective Date.

## XIV.  BENEFIT PLANS

As of and subject to the Effective Date, all employee compensation and benefit plans, policies, and programs of Debtor applicable generally to their employees, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, incentive plans, and life, accidental death, and dismemberment insurance plans, but excluding any employment and severance agreements, plans or policies (unless, with the consent of the requisite consenting parties, such employment and severance agreements, plans or policies are assumed by Debtor pursuant to Court order), shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and Debtor's obligations under such agreements and programs shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans specifically rejected pursuant to the Plan, including on the Schedule of Additional Rejected Contracts and Leases (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, contracts, or programs.

## XV.  LIQUIDATION ALTERNATIVE

If the Plan is *not* confirmed and consummated, Debtor believe the most likely alternative is a liquidation of Debtor under Chapter 7 of the Bankruptcy Code. In a Chapter 7 liquidation, a Chapter 7 trustee would incur additional Administrative Claims that would be paid before any distribution to creditors and would result in no additional value to claimholders. Debtor therefore believe that liquidation of its property in a Chapter 7 cases would dramatically reduce the total amount available to Creditors as compared to reorganization under this Plan. Thus, Debtor recommends that Holders of Claims and Interests vote to accept the Plan. Please refer to the liquidation analysis attached hereto as **Exhibit "C"** for an overview of potential distributions to creditors in a Chapter 7 liquidation.

Dated: March 31, 2021

**Evergreen Mortgage Notes, LLC**

By: _____
Name: Marc Younger
Its:      CEO and Managing Member